IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**UNITED STATES OF AMERICA**

v.                                                  **Civil No. 1:17cv122-HSO**
                                                    **Criminal No. 1:14cr77-HSO-RHW-1**

**HOSEA BLACKSTON**

<u>**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A
PERSON IN FEDERAL CUSTODY PURSUANT TO 28 U.S.C. § 2255**</u>

BEFORE THE COURT is the Motion [276] to Vacate, Set Aside, or Correct

Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255 by Hosea

Blackston ("Defendant" or "Blackston"). Defendant seeks to set aside his May 8,

2015, Judgment of Conviction [167] for possession with intent to distribute

methamphetamine in violation of 21 U.S.C. § 841(a)(1). The Government has filed a

Response [279] in opposition, and Blackston's former counsel has filed an Affidavit

[278] responding to Blackston's allegations.[1] After due consideration of the Motion

[276], the record, and relevant legal authority, the Court finds that Blackston's § 2255

Motion should be denied without an evidentiary hearing.

I. <u>BACKGROUND</u>

A.      <u>Defendant's Sentencing and Appeal</u>

On November 5, 2014, a Grand Jury returned an eight-count Indictment [3]

---

[1] On May 30, 2017, the Court received a letter from Blackston "requesting that the Court not
rule on my 2255 until I submit the exhibits, which are in the process of being sent to me."
Letter [280] at 1. The Letter [280] did not contain any further description of what exhibits
Blackston anticipated submitting or their relevance to the Motion [276]. To date, nothing
additional has been received by the Court from Blackston.

against Defendant and others, with Defendant named only in Count One, Count Six, and Count Seven.  Indictment [3] at 1-2, 4-5.  Defendant was charged with: (1) conspiracy to possess with intent to distribute more than 50 grams of methamphetamine, as prohibited by 21 U.S.C. § 846 (Count One); (2) possession with intent to distribute more than 5 grams of methamphetamine, as prohibited by 21 U.S.C. § 841(a)(1) (Count Six); and (3) possession with intent to distribute more than 50 grams of methamphetamine, as prohibited by 21 U.S.C. § 841(a)(1) (Count Seven).  *Id.*

Pursuant to a written Plea Agreement [132] and Plea Supplement [133] (collectively, the "Plea Agreement"), entered into with the Government on February 18, 2015, Defendant pleaded guilty to Count Six of the Indictment [3].  Minute Entry, February 18, 2015.  Pursuant to the Plea Agreement, Defendant expressly waived, with the exception of the right to raise ineffective assistance of counsel claims, "the right to appeal the conviction and sentence imposed in this case" and "the right to contest the conviction and sentence or the manner in which the sentence was imposed in any post-conviction proceeding, including but not limited to a motion brought under Title 28, United States Code, Section 2255 . . . ."  Plea Agreement [132] at 4-5.

Prior to sentencing, the United States Probation Office ("Probation Office") prepared a Presentence Investigation Report ("PSR") as to Blackston, which the Court ultimately adopted at sentencing without change.  *See* Statement of Reasons [166] at 1.  Applying the United States Sentencing Commission 2014 Guidelines

Manual ("the Guidelines"), the PSR calculated Blackston's base offense level as 38 based upon statements he made to law enforcement agents during an interview on May 22, 2014, that he had assisted in distributing approximately 4.5 kilograms of methamphetamine. *See* PSR [164] at 16-17, 31, 33. The PSR recommended that Blackston's sentence was subject to a two-level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1), a two-level enhancement for an offense involving importation of methamphetamine under U.S.S.G. § 2D1.1(b)(5), and a four-level enhancement for Defendant's role as an organizer or leader under U.S.S.G. § 3B1.1(a). *Id.* at 32. The PSR assigned Blackston a three-level reduction for acceptance of responsibility, resulting in a total adjusted offense level of 43. *Id.* at 33-34.

Blackston's prior criminal convictions resulted in a criminal history score of 14, which placed him in a criminal history category of VI. *Id.* at 36. Based upon Blackston's total offense level of 43 and criminal history category of VI, the Guidelines recommended a sentence of life imprisonment; however, Blackston's count of conviction, 21 U.S.C. § 841(b)(1)(B), limited the sentence that Blackston could receive to a maximum term of 40 years. *Id.* at 42-43.

Defendant submitted Objections [164-2] to the PSR, arguing that the three recommended sentencing enhancements should not be applied. Obj. [164-2] at 2-3. Blackston also contended that the amount of methamphetamine used to calculate the base offense level should have been limited to the 27.5 grams procured from

Blackston by the Government in the controlled purchase which formed the basis of the charge in Count Six of the Indictment [3]. *Id.* at 2. According to Blackston, using an amount of 27.5 grams, instead of the 4.5 kilograms of methamphetamine Blackston had estimated assisting in distributing, would have resulted in a lower offense level and a lower sentencing range.[2] *Id.* at 3-4.

Defendant further objected that the proffer agreement he had executed with the Government was allegedly used by the Probation Office in an attempt to enhance his sentence, when the law enforcement agents promised Blackston that the proffered information would not be used against him and would not be furnished to the Probation Office. *Id.* at 2. Defendant did not object to the PSR's calculation of his criminal history points or the criminal history category of VI.

At the sentencing hearing held on May 8, 2015, the Court overruled Blackston's Objections [164-2] and sentenced him to 480 months imprisonment as to Count Six, the statutory maximum, and dismissed Counts One and Seven of the Indictment [3] on the Government's Motion. J. [167] at 1-2. The Court also

---

[2] Defendant's April 2, 2015, Objections [164-2] argued that the base offense level using 27.5 grams of methamphetamine, and without the enhancements, should have been 18, prior to the three-level reduction for acceptance of responsibility, resulting in a total offense level of 15 and a corresponding sentencing range of 41-51 months. Obj. [164-2] at 3-4. Defendant's § 2255 Motion [276] claims that his earlier calculation is incorrect, and that the calculation based on 27.5 grams of methamphetamine without the enhancements would have instead resulted in a base offense level of 26, a total offense level of 23 after the application of the three-level reduction for acceptance of responsibility, and a sentencing range of 92-115 months using a criminal history category of VI. Mot. [276] at 21. Alternatively, Defendant claims his sentencing range would have been 188-235 months if the Court had still applied the enhancements but used 27.5 grams of methamphetamine to calculate the base offense level. *Id.* at 21-22.

sentenced Blackston to 5 years of supervised release, a $10,000.00 fine, and a $100.00 special assessment. *Id.* at 3, 5.

Defendant, through counsel, appealed his sentence to the United States Court of Appeals for the Fifth Circuit, contending that this Court committed numerous calculation errors in applying the Guidelines and that his sentence was unreasonably long in light of the facts of the case. *See United States v. Blackston*, 630 F. App'x 345, 346 (5th Cir. 2016) (per curiam). The Fifth Circuit dismissed the appeal on January 15, 2016, enforcing the waiver contained in Blackston's Plea Agreement [132], in which "he expressly waived the right to appeal his sentence 'on any grounds whatsoever' with the sole exception of a claim of ineffective assistance of counsel, which he [did] not raise" on direct appeal.[3] *Id.*

B.    Defendant's § 2255 Motion [276]

1.    Defendant's claim

On April 25, 2017, Defendant's § 2255 Motion [276] was received and filed into the Court record. Defendant avers that he executed the Motion [276] and placed it

---

[3] In its earlier Order [273] Denying Blackston's Motion [272] for Extension of Time to File a § 2255 Motion, the Court erroneously stated that the Fifth Circuit dismissed the appeal on February 8, 2016, the date the mandate was issued. Order [273] at 1. Blackston's appeal was actually dismissed on January 15, 2016. *See* J. [238] at 1.

into the prison mailing system on April 13, 2017.[4]  Mot. [276] at 12.  Proceeding pro

se, he asks the Court to vacate his sentence on grounds that it was unreasonably long

under the facts of this case.  *Id.* at 2, 38-41.  Blackston also maintains that the

waivers in the Plea Agreement [132] are unenforceable.  *Id.* at 2, 28-30.

Blackston contends that the Court erred in applying the three enhancements

recommended by the PSR, *id.* at 2, and that his counsel was ineffective for "allowing"

the Court to apply the two-level sentencing enhancements for both possession of a

firearm and for importation of methamphetamine, *id.* at 6, 8.  Defendant maintains

that counsel failed to interview Jamilia Nix ("Nix"), Blackston's girlfriend and

codefendant, who could have revealed that Blackston did not possess a firearm and

that the drugs involved were procured from Texas rather than imported from Mexico.

*Id.*

---

[4] The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241, *et seq.*, provides that habeas applications filed by petitioners in federal custody are governed by a one-year limitations period that generally begins to run on the date on which the judgment of conviction becomes final.  *See* 28 U.S.C. § 2255(f)(1).  "[T]he conviction becomes final, and the one-year period begins to run, upon expiration of the time for seeking certiorari in the U.S. Supreme Court, even where, as here, the appellant has not actually filed such a petition."  *United States v. Gamble*, 208 F.3d 536, 536 (5th Cir. 2000).  A defendant has ninety days after the court of appeals affirms a conviction to file a petition for certiorari in the United States Supreme Court.  SUP. CT. R. 13(1) ("[A] petition for a writ of certiorari . . . is timely when it is filed . . . within 90 days after entry of the judgment.").

Blackston's Judgment of Conviction [167] became final on April 14, 2016, after the expiration of the ninety-day window for filing a petition for certiorari that commenced after the Fifth Circuit dismissed his appeal on January 15, 2016.  Blackston's Motion [276] is only timely if it was filed on or before April 14, 2017.  Under the prison mailbox rule, Blackston's Motion [276] is deemed filed on the date he delivered it to prison officials for mailing. *Spotville v. Cain*, 149 F.3d 374, 375 (5th Cir. 1998).

The Government did not assert the AEDPA statute of limitations as an affirmative defense in its Response [279].  The Court will assume that Blackston delivered the Motion [276] to prison officials on April 13, 2017, and that it is timely under AEDPA.

Defendant also argues that his counsel was ineffective in allowing the Court to apply a four-level enhancement based upon Defendant's role as an organizer or leader because "[i]t takes 5 or more people to be consider[ed] as a leader." *Id*. at 13. Blackston claims that he identified codefendants who would have provided statements that they were not members of any drug trafficking organization, and that Blackston was not the leader of any such organization. *Id*.

Blackston further alleges that his counsel was ineffective in failing to move to suppress statements Blackston provided to agents which formed the basis for the amount of methamphetamine, 4.5 kilograms, for which Defendant was held accountable under the Guidelines. *Id*. at 4, 13. According to Blackston, "[i]neffective assistance of counsel rendered [his] guilty plea involuntary based upon incomplete and incorrect legal advice" because counsel allegedly did not inform him that his statements were admissible as a factor in the determination of his sentence. *Id*. at 5.

 Finally, Blackston contends for the first time that his counsel was ineffective in failing to object to the calculation of his criminal history score under the Guidelines, which he argues should have placed him in a criminal history category of V rather than VI. *Id*. at 14. Defendant states that he did not raise any claims of ineffective assistance of counsel during his direct appeal because "[i]neffective assistance claims[s] normally not raised on direct appeal." *Id*. at 5.

2. <u>Defense Counsel's Affidavit</u>

Doyle Coates, the court-appointed attorney who represented Blackston throughout his guilty plea, sentencing, and appeal, filed an Affidavit [278] on May 10, 2017, refuting Blackston's allegations. Mr. Coates states that each provision of the Plea Agreement was explained in detailed to Defendant, who voluntarily accepted it. Counsel's Aff. [278] at ¶ 8. During the plea colloquy, Blackston testified under oath that he was satisfied by the representation afforded him by counsel, and further stated that he understood that the Court could consider evidence of any relevant conduct at sentencing, regardless of whether such evidence would be admissible under the rules of evidence that would apply at trial. *Id.* at ¶ 9. Mr. Coates avers that Blackston never requested that counsel file a motion to suppress on his behalf, and that there was no basis to do so. *Id.* at ¶ 10. Counsel further admits that he did not interview Nix, but explains that he did not have any contact with Nix because she was a codefendant and was represented by other counsel. *Id.* at ¶ 11.

Finally, Mr. Coates states that he reviewed the PSR with Defendant, and that Defendant voiced no objections other than those prepared by counsel and submitted to the Court. *Id.* at ¶ 12. Counsel maintains that he raised every meritorious argument now asserted in Defendant's § 2255 Motion [276], and emphasizes that Defendant had no objections to the criminal history component of the PSR, although "[e]ach paragraph was reviewed closely with the Defendant." *Id.* at ¶¶ 12-16.

3. <u>The Government's Response</u>

The Government filed a Response [279] opposing Blackston's § 2255 Motion [276] on May 22, 2017. The Government takes the position that the waiver of the right to seek post-conviction relief in Blackston's Plea Agreement [132] should be enforced, and that Blackston was clearly advised during the plea colloquy that his sentence could be up to forty years. Resp. [276] at 1-2. The Government further contends that Blackston cannot meet the standard established in *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984), to show that his counsel was ineffective. *Id.* at 3-4.

## II. <u>DISCUSSION</u>

A. <u>Legal Standard</u>

A collateral attack on a sentence "is fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). Upon conviction and exhaustion or waiver of any right to appeal, courts are entitled to presume that a defendant "stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). "[O]n collateral attack, a defendant is limited to alleging errors of a 'constitutional or jurisdictional magnitude.'" *United States v. Samuels*, 59 F.3d 526, 528 (5th Cir. 1995) (quoting *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991)). Relief under § 2255 is therefore "reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United*

*States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam).

"There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (quoting 28 U.S.C. § 2255(a)). A defendant generally "may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *Shaid*, 937 F.2d at 232 (quoting *Frady*, 456 U.S. at 168).

"The validity of a guilty plea is a question of law . . . ." *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000) (citing *United States v. Amaya*, 111 F.3d 386, 388 (5th Cir. 1997)). "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citation omitted). Therefore, "[a] guilty plea will be upheld on habeas review if entered into knowingly, voluntarily, and intelligently." *Hernandez*, 234 F.3d at 254 (quoting *Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000)).

Whether a guilty plea was "knowing" turns on whether a defendant understands the direct consequences of a plea, including the maximum possible penalty. *Id*. at 254 n.3. "The Constitution does not require a great deal of knowledge on the part of the defendant." *United States v. Guerra,* 94 F.3d 989, 995 (5th Cir.

1996).  "[A] plea of guilty entered by one fully aware of the direct consequences of the plea is voluntary in a constitutional sense unless induced by threats, misrepresentation, or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business."  *Bousley*, 523 U.S. at 619 (quotation omitted).

Defendant pleaded guilty to Count Six of the Indictment [3] on February 18, 2015, and the Judgment [167] was entered May 8, 2015.  Defendant's appeal was dismissed on January 15, 2016.  After conviction and exhaustion of appeal, it is presumed that Defendant stands fairly and finally convicted.  *Samuels*, 59 F.3d at 528.

B.     Blackston's waiver of the right to assert claims under 28 U.S.C. § 2255 is enforceable.

Defendant asserts that ineffective assistance of counsel rendered his guilty plea involuntary, because "[c]ounsel did not inform [him that his] statements were admissible as a sentencing factor nor was [he] informed they were illegally obtained and subject to suppression."  Mot. [276] at 5.  Defendant further contends that the waiver provisions in his Plea Agreement are unenforceable because they were not entered into knowingly and voluntarily.  *Id.* at 30.  Based upon a review of the record, the pleadings, and relevant legal authority, the Court finds that with the exception of his ineffective assistance of counsel claims, Defendant's other claims in his Motion [276] are barred because he knowingly and voluntarily waived the right to file a § 2255 Motion as a condition of his Plea Agreement, which Defendant and his counsel

signed on February 6, 2015.  *See* Plea Agreement [132] at 6.

Defendant has not established that ineffective assistance of counsel rendered his guilty plea involuntary because he did not understand that his statements to law enforcement about the amount of methamphetamine he distributed could be considered in determining his sentence.  *See United States v. Scott*, 857 F.3d 241, 245 (5th Cir. 2017) (per curiam) ("That [the defendant] subjectively believed the Government would not present evidence connecting him to [a separate crime] is a 'misapprehension under which a defendant labors,' but the Constitution 'does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights.'") (quoting *United States v. Ruiz*, 536 U.S. 622, 630 (2002)).

The Plea Agreement [132] expressly states that

> Defendant further acknowledges and agrees that any factual issues regarding the sentencing will be resolved by the sentencing judge under a preponderance of the evidence standard, and Defendant waives any right to a jury determination of these sentencing issues.  Defendant further agrees that, in making its sentencing decision, the district court may consider any relevant evidence without regard to its admissibility under the rules of evidence applicable at trial.

Plea Agreement [132] at 5.  The Plea Agreement [132] contains no provision limiting the Government's use of relevant conduct and does not prohibit the Government from introducing evidence that Blackston was engaged in drug distribution activity beyond Count Six of the Indictment [3].  The Plea Agreement [132] states that it "completely reflects all promises, agreements and conditions made by and between" the

Government and Defendant. *Id.* at 6.

Blackston's former counsel maintains that each provision of the Plea Agreement [132] and Plea Supplement [133] were explained to Blackston at a conference held on February 6, 2015. Counsel's Aff. [278] at 2. At the plea hearing conducted on February 18, 2015, the Court specifically reviewed the terms of the Plea Agreement providing that Blackston was waiving the right to pursue a § 2255 motion, that any factual issues regarding sentencing would be decided by the sentencing judge under a preponderance of the evidence standard, and that in making a sentencing decision, the Court could consider any relevant evidence without regard to whether that evidence would be admissible at a trial.

Blackston attested under oath that he fully understood and voluntarily approved of all terms of the Plea Agreement [132] and Plea Supplement [133], including the waiver and the provisions related to sentencing. Blackston further declared that he understood that he faced a maximum term of imprisonment of up to 40 years. "Solemn declarations in open court carry a strong presumption of verity." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)).

To the extent Defendant alleges ineffective assistance of counsel in his Motion [276], his claims pertain to his sentencing, not his guilty plea. *See* Mot. [276] at 20 ("This Appeal arises from the sentencing proceedings that took place after the guilty plea."). Because Defendant knowingly and voluntarily waived his § 2255 rights in the

process of entering his guilty plea, he is bound by the terms of the Plea Agreement. Defendant's claims, other than his ineffective assistance of counsel claims, should be dismissed.

C.    <u>Defendant's assertions that he received ineffective assistance of counsel at sentencing are not well taken.</u>

To demonstrate ineffective assistance of counsel, Blackston must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's ineffective assistance was prejudicial. *Strickland*, 466 U.S. at 687-88. "Failure to establish either prong defeats the claim." *Tucker v. Johnson*, 115 F.3d 276, 280 (5th Cir. 1997). "[M]ere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue." *Green v. Johnson*, 160 F.3d 1029, 1042-43 (5th Cir. 1998).

"For the deficiency prong, counsel's performance is to be accorded 'a heavy measure of deference.'" *United States v. Rivas-Lopez*, 678 F.3d 353, 357 (5th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 197 (2011)). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Courts "will not find inadequate representation merely because, with the benefit of hindsight, [they] disagree with counsel's strategic choices." *Tucker*, 115 F.3d at 280.

To demonstrate "prejudice," "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable

14

probability is a probability sufficient to undermine confidence in the outcome." *Id.*

"The likelihood of a different result must be substantial, not just conceivable."

*Harrington v. Richter*, 562 U.S. 86, 112 (2011).

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v.*

*Kentucky*, 559 U.S. 356, 371 (2010). "An ineffective-assistance claim can function as a

way to escape rules of waiver and forfeiture and raise issues not presented at trial,

and so the *Strickland* standard must be applied with scrupulous care, lest intrusive

post-trial inquiry threaten the integrity of the very adversary process the right to

counsel is meant to serve." *Richter*, 562 U.S. at 105 (quotation omitted).

In support of his argument that his sentence should be reduced, Defendant

asserts that his attorney was ineffective in failing to move to suppress statements

that Defendant made to law enforcement and for allowing the Court to apply three

enhancements to his sentence. Mot. [276] at 4-13. Even construing all facts alleged

in Blackston's favor, the Court finds that Blackston has not demonstrated deficient

performance or prejudice under *Strickland*.

1. Blackston has not shown that counsel's representation fell below an objective
standard of reasonableness.

    a. Defendant has not shown that counsel was ineffective in failing to move
    to suppress the statements at issue.

During an interview on May 22, 2014, Defendant admitted to agents that he

was involved in distributing approximately 4.5 kilograms of methamphetamine. *See*

PSR [164] at 16-17. Defendant was held responsible for the estimated 4.5 kilograms

of methamphetamine when the Probation Office calculated Defendant's base offense level under the Guidelines. *Id.* at 31. Defendant now argues that his sentence would be substantially lower if his counsel had moved to suppress this statement and the Court had based his sentence on a lesser amount, the 27.5 grams of methamphetamine involved in the controlled buy that formed the basis of Count Six of the Indictment [3]. Mot. [276] at 4, 34.

According to Blackston's former counsel, "there was no basis" to file a motion to suppress Blackston's statements, and Blackston did not ask him to do so. Counsel's Aff. [278] at 3. Based upon this direct evidence, which Blackston does not contradict, the Court finds that counsel's strategic choice does not constitute ineffective assistance of counsel. *See United States v. Juarez*, 672 F.3d 381, 386 (5th Cir. 2012) (holding that under Strickland, "the court is 'highly deferential' and must apply a strong presumption that counsel's performance was reasonable or 'might be considered sound trial strategy'") (quoting *Strickland*, 466 U.S. at 689).

Furthermore, at the plea hearing, Blackston agreed with the Government's description of the facts that it was prepared to prove at trial, including that Blackston had confessed to agents of the FBI that he had been receiving shipments of methamphetamine from a codefendant. The Court finds that Blackston has not demonstrated that counsel was ineffective for failing to move to suppress his May 2014 statements. *See Wilkes*, 20 F.3d at 653 ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim.") (quotation

omitted).

The Court notes that Defendant's Motion [276] contains inconsistent references as to the source of the estimated 4.5 kilograms of methamphetamine used to calculate his base offense level that he now argues should have been suppressed. For example, Defendant claims at one point that the estimate came from a confession he made in April 2014. Mot. [276] at 43. However, Defendant also maintains that "[t]he 4.5 [k]ilograms or more of methamphetamine finding came about from Mr. Blackston's [February 2015] proffer, where case agents assured the defendant that they would not use it to enhance his sentence." *Id.* at 33.

Defendant's objection on grounds that the Government reneged on a promise that proffered information would not be furnished to the Probation Office in an attempt to enhance his sentence lacks merit. *See* Mot. [276] at 2, 19. The PSR states that the estimated quantity of 4.5 kilograms of methamphetamine used to calculate the base offense level was obtained from voluntary statements made by Defendant in May 2014, and not from the later proffer interview conducted in February 2015. PSR Addendum [164-1] at 2; *see also* PSR [164] at 17. The Probation Office further stated that "[t]he probation officer did not use any information from the defendant's proffer statement in determining the total offense level in this case." PSR Addendum [164-1] at 2.

At the sentencing hearing held on May 6, 2015, FBI Task Force Agent Trey Collins confirmed that Blackston had estimated the quantity of methamphetamine he

had distributed during an interview that occurred prior to the later proffer interview. Agent Collins further testified that during the first interview, Blackston estimated that he had been involved in distributing between 4.5 and 8 kilograms of methamphetamine, and that the Government had used the lowest amount estimated by Blackston. The PSR also stated that, although a codefendant estimated that he had provided Blackston with 6 or 7 kilograms of methamphetamine between 2012 and 2014, the Probation Office used Blackston's May 22, 2014, estimate of 4.5 kilograms, the lowest amount, to calculate his Guideline range. PSR [164] at 31.

In ruling on the objection as to the quantity of methamphetamine attributed to Defendant, the Court expressly found that the 4.5-kilogram quantity was an amount Defendant provided in an unprotected statement made before his proffer, which was given at a later date. The Court further stated that information derived from the proffer was not considered in calculating Blackston's sentencing range under the Guidelines. Accordingly, the record does not support Defendant's contention that information obtained from his proffer was used against him in sentencing. Counsel's performance in not moving to suppress this statement was not deficient.

> b. Defendant has not shown that counsel was ineffective in relation to the application of enhancements to his sentence.

The PSR recommended that Blackston's sentence was subject to a two-level enhancement for possession of a firearm, a two-level enhancement for an offense involving importation of methamphetamine, and a four-level enhancement for the Defendant's role as an organizer or leader. PSR [164] at 32. Defendant maintains

that his counsel was ineffective when he "neglected to investigate" the three enhancements, Mot. [276] at 42, and "for allowing" the enhancements to be applied to his sentence, Mot. [276] at 13. However, Defendant's attorney did in fact object to each of these recommended enhancements, both in writing and at the sentencing hearing. *See* Obj. [164-2].

Mr. Coates submits that he "raised every meritorious objection and argument set out in Defendant's [§ 2255] Motion either prior to sentencing, at sentencing in the form of Objections to the PSR, Objections at the sentencing hearing on May 6, 2015." Counsel's Aff. [278] at 6. Counsel maintains that he met with Defendant to determine what objections Blackston had to the PSR, and that Blackston reviewed and executed the written Objections [164-2] ultimately submitted to the Court. *Id.* at 4. Each of Defendant's objections to the PSR were reviewed at a presentence conference with the Probation Office and the Government, *see* PSR Addendum [164-1] at 1, and subsequently presented to the Court in Blackston's Objections [164-2] and separate Sentencing Memorandum [164-3]. Before imposing Blackston's sentence, the Court heard arguments at the sentencing hearing from Blackston and the Government on each objection, and Blackston was permitted to present evidence regarding each of the objections before the Court ruled on them.

With respect to the two-level firearm and importation enhancements, Blackston argues that his counsel was ineffective for failing to interview Nix, Blackston's girlfriend, who could have testified that Blackston did not possess a

19

firearm and that the drugs involved were procured from Texas rather than imported from Mexico. Mot. [273] at 6, 8. Blackston further asserts that counsel was ineffective in failing to interview or call as witnesses Calvin Allen, Samuel McDaniel, and Christina Miller, three other codefendants. *Id.* at 42. However, counsel maintains that he did not communicate with any of Blackston's codefendants, and that the proffered statements made by Blackston's codefendants, as set forth in the PSR, "were not favorable to the Defendant." Counsel's Aff. [278] at 4.

Agent Collins and Probation Officer Matthew Becker both testified at the sentencing hearing that, while there was no evidence that Blackston physically handled a gun, there was evidence that firearms were brandished at Blackston's residence by others connected with the drug distribution ring. Agent Collins further testified that a courier whom Blackston had sent to Texas to procure a large quantity of methamphetamine had produced a statement that the particular trip had been delayed because of a disruption in the supply of the drug from Mexico.

With respect to Blackston's objection to the enhancement on account of his leadership role in the drug trafficking operation, counsel presented this objection to the Court and the Court heard testimony from Blackston himself prior to sentencing. The Court also heard testimony from Agent Collins and Probation Officer Becker at the sentencing hearing that identified Blackston as being situated at "one of the top levels" of a group of drug dealers.

Following the Court's rulings on Blackston's objections to the PSR, counsel

moved for a downward variance from the statutory maximum sentence of 40 years.

Although the Court ultimately overruled Blackston's objections to the PSR and

denied his motion for a variance, considering counsel's efforts to obtain a lower

sentence for Defendant, Blackston has not demonstrated that he received ineffective

assistance of counsel with respect to the enhancements applied to his sentence.

      c. <u>Defendant has not shown that counsel was ineffective in failing to object
to the criminal history in the PSR.</u>

Blackston alleges that his counsel was ineffective in failing to object to the

PSR's calculation of a criminal history score of 14 which placed him in criminal

history category VI. Mot. [276] at 14. Blackston contends that he received too many

points in relation to certain prior convictions, and should have been assigned a

criminal history category of V instead. *Id.*

At sentencing, Blackston did not object to the criminal history set forth in the

PSR, nor does he allege that he instructed his attorney to do so. Blackston's counsel

maintains that "[e]ach paragraph [of the PSR] was reviewed closely with the

Defendant and he had <u>NO</u> objections to the criminal history set out in the PSR."

Counsel's Aff. [278] at 4. The Court finds that Blackston has not shown that

counsel's performance was deficient for failing to object to the criminal history set

forth in the PSR.

      2. <u>Blackston has not demonstrated that he was prejudiced by counsel's
deficient performance.</u>

Even if counsel's representation fell below an objective standard of

reasonableness, Blackston has not shown that counsel's alleged deficient performance was prejudicial. *Strickland*, 466 U.S. at 687-88. With respect to counsel's failure to object to the PSR's calculation of Blackston's criminal history category, even if such an objection had been made and sustained by the Court, at a criminal history category of V and a total offense level of 43, Defendant would have still faced the same sentencing range under the Guidelines, life imprisonment, regardless of which criminal history category he was assigned. *See* U.S.S.G. § 5A, Sentencing Table (2014). Accordingly, Blackston cannot show prejudice as to the length of his sentence due to his counsel's alleged ineffective assistance in failing to object to the criminal history category assigned in the PSR.

With respect to the sentencing enhancements and the amount of methamphetamine for which Blackston was held responsible, counsel objected to the amount and the enhancements both in writing and at the sentencing hearing. *See* Obj. [164-2]. Even if Blackston's former counsel's performance was somehow deficient in making these objections, Blackston has not shown that there is a substantial likelihood that the result would have been different had the objections been sustained. At the sentencing hearing, the Court considered the statutory sentencing factors found at 18 U.S.C. § 3553, particularly the serious nature of the offense and Defendant's extensive criminal past. The Court denied Defendant's motion for variance, and further stated that, even if the Court had incorrectly calculated the Guidelines or otherwise incorrectly ruled on any objections, the Court

22

would nevertheless have imposed the same sentence as a non-guidelines sentence based upon its analysis of the § 3553 factors. Accordingly, the Court finds that Defendant has not demonstrated that the result of the proceeding would have been different but for the deficient performance of counsel.

## III. CONCLUSION

For the foregoing reasons, the Court finds that Blackston was advised by competent counsel, and his guilty plea was knowing and voluntary. Blackston has not demonstrated that his former counsel's representation fell below an objective standard of reasonableness, or that counsel's purported ineffective assistance was prejudicial. *See Strickland*, 466 U.S. at 687-88. Blackston's remaining claims are foreclosed by the waiver provisions contained in his Plea Agreement [132].

Because the Motion [276], files, and records conclusively show that Blackston is entitled to no relief, the Court finds that the Motion [276] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 should be denied without an evidentiary hearing.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, the Motion [276] to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody, filed pursuant to 28 U.S.C. § 2255 by Defendant Hosea Blackston, is **DENIED.**

**SO ORDERED AND ADJUDGED**, this the 25th day of August, 2017.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE

23